NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| **JOHN SANTELLO,** | |
| Plaintiff, | Civil Action No. 05-cv-4385 (PGS) |
| v. | |
| **JO ANNE BARNHART, COMMISSIONER OF SOCIAL SECURITY,** | OPINION |
| Defendant. | |

**SHERIDAN, U.S.D.J.**

      This matter comes before the Court upon the appeal of Plaintiff John M. Santello ("Plaintiff" or "Santello") from the Commissioner of the Social Security Administration's ("Commissioner") final decision denying his request for Social Security Disability Insurance (SSDI). The Court has jurisdiction to review this matter pursuant to 42 U.S.C. §405(g). This matter is decided without oral argument pursuant to Rule 78. As detailed below, it is the finding of the Court that the Administrative Law Judge's step three determination was conclusionary and could not be meaningfully reviewed, hence the matter is remanded to more fully explain the step three findings.

I.

      Plaintiff filed an application for SSDI on August 29, 2002, alleging a disability commencing on November 30, 2001. More specifically, Plaintiff alleges disability due to sleeplessness, being tired, dizziness, muscle aches, a heart condition and shortness of breath (R. at 66). In addition, he alleged that he could not function physically and that his inability to cope with stress limited his

ability to work. (R. at 66). On July 1, 2003 a Notice of Disapproved Claim was issued to Plaintiff by the Social Security Administration (SSA) (R. at 25). The SSA transmittal report indicated a primary diagnosis of coronary heart disease and a secondary diagnosis of hypertension, but denied Plaintiff disability status.  The SSA indicated that the following factors were considered in making their decision:

> \*    You have heart problems. However, following a recovery period, you should be able to work.
>
> \*    Your blood pressure has been high in the past. However, it is being controlled with treatment.
>
> \*    You may have pain. However, it does not limit your ability to move about and use your limbs.
>
> \*    The evidence shows no other condition which significantly limits your ability to work
>
> \*    Based on the description of your job as a section manager in a brokerage firm, which you have performed for about 14 years, we have concluded that you have the ability to return to this work.

(R. at 25).

On July 23, 2003, Mr. Santello filed a Request for Reconsideration. In his Reconsideration Report, Mr. Santello indicated that since his original application, his doctor had restricted him from lifting over five pounds with no overhead reaching. He also indicated that he could not help around the house, and no longer socializes (R. at 99-101). His Request for Reconsideration was denied on September 16, 2003.   On October 2, 2003, Plaintiff filed a request for a hearing before an Administrative Law Judge.  On November 16, 2004 a hearing was held before Administrative Law Judge Katherine Edgell (ALJ) and on December 22, 2004 the ALJ denied Plaintiff's application. Thereafter, Plaintiff submitted a request to the SSA Appeals Council for review of the ALJ's

decision (R. at 8). At that time, he submitted as new evidence a report for a January 24, 2005 admission to the Valley Hospital emergency room[1]. On July 23, 2005, the Appeals Council denied the request for review, and deemed the ALJ's decision to be the final decision of the SSA.

On September 8, 2005 Plaintiff filed this appeal. The gravamen of Plaintiff's complaint is that there is no substantial evidence to support the adverse decision denying his claim of disability. (Complaint ¶9). In addition, Plaintiff's attorney argues that the Commissioner and the ALJ improperly evaluated the medical evidence.

II.

At the November 16, 2004 Administrative Law Hearing, Plaintiff testified on his own behalf as follows.

Plaintiff was born on March 6, 1944 in Clifton, New Jersey. He resides with his wife in an apartment in Wayne, New Jersey. They have lived there since 1968. The building in which he resides does not have an elevator. Plaintiff climbs approximately two and one-half flights of stairs to his apartment (R. at 400). Plaintiff is 6'1" tall, and weighed approximately 240 pounds at the time of the hearing. With regard to his weight, Plaintiff testified that he gained about 25 pounds since retiring, and that his doctor wants him to lose weight. Plaintiff stated that "I try to exercise as much as I can" (R. at 401).

Plaintiff worked for 15 years as a Section Manager for Morgan Stanley. On November 30, 2001 he accepted an early retirement "buy-out"[2]. He has some managerial and supervision skills,

---

[1] Evidently, plaintiff felt dizzy, was examined at the Valley Hospital emergency room, and was released shortly after the examination.

[2] Coincidentally, the date of Plaintiff's early retirement and the day on which he allegedly became disabled are the same.

and considers himself to be "computer illiterate." (R. at 402). His supervisory work experience included overseeing the work of 12 employees who perform clerical work and processed back office paperwork for the buying and selling of stock transactions. He testified that approximately two-thirds of his day required walking to and from different departments to check that the employees he supervised were doing their tasks. (R. at 403). He was also required to fill out written forms, and perform some computer keyboard activities. Plaintiff has no other skills (i.e. carpentry or plumbing).

     Mr. Santello testified that he has had heart problems since he was 35 years old. In March, 2001, he fainted at work and was taken to the hospital where he was treated and released. Several days later he was admitted to Valley Hospital where a defibrillator was inserted. He testified that he is examined by his treating physician, Dr. Stroebeck, every six months, and that he has his defibrillator checked every three months. At some point, his defibrillator was replaced because the lead wire was defective; but the Plaintiff indicated the new one was "okay" (R. at 416). About six months after the defibrillator was inserted, he received his "buy out" paperwork for early retirement from Morgan Stanley. Plaintiff stated that "after discussing it with my doctor and family, we decided it was the best way to go." (R. at 405). When questioned by the ALJ about his present symptoms, and why he couldn't work, he replied that he is "tired all the time and I have muscle pain [in his legs] all the time" which "the doctor thinks it is from the medication." In addition, "I have palpitations . . . all the time" and "I have blurred vision .. . . once in awhile I get dizzy." (R. at 406). Plaintiff further testified that his doctor has restricted his activities. According to Plaintiff, he should not lift objects over 5 pounds, should avoid confrontations of any kind, and should lose weight. (R. at 407). Plaintiff described his typical day as follows: He rises about 7:30 a..m., washes and dresses, then

eats breakfast and watches television. He takes a nap at around 11:00 a.m. "Some mornings I go out by myself for a walk to get some exercise". (R. at 408) He stated that he goes about a block. He sometimes shops for groceries with his wife (R. at 407-408), but does not help with chores around the house.

In addition to a walk each day, Mr. Santello stated that "the doctor wants me to exercise so when it gets cold I can walk inside the Y." "It's a pretty big track. I can go like two times around with my wife and then she continues on." In addition, he stated that "I try to swim . . . well, it's not actually swimming because my arm, I'm not allowed to take my arm and go over this", and that he "moves around in the water with the least resistance." Socially, Mr. Santello stated that he goes to church, rents movies, reads and vacationed in Florida for two weeks in order to visit his brothers. (R. at 410). He denied smoking, drinking and taking drugs. (R. at 411). When questioned whether he slept at night, he responded "Yeah. I sleep between five and half and six hours." He also testified that he takes two naps per day. (R. at 412). When questioned by the ALJ regarding his shortness of breath, Mr. Santello testified that "I can walk a block - and maybe try to go for a little further than that and I have to stop", and that when climbing stairs "I have to stop after the first flight. The first flight is about 12 steps, and then we stop and then we go to the second." The ALJ asked Plaintiff about the side effects from his medicine. He testified his blurred vision was from his prescriptions and "I think the muscle, the muscle pain is from the statin, the cholesterol lowering drugs." (R. at 415).

### III.

It is acknowledged by all that the Plaintiff has a significant medical history. He is currently taking medication for his heart condition, high blood pressure and high cholesterol.

In 1979, Plaintiff suffered his first heart attack. In May, 1991, he sustained a second heart attack and underwent triple bypass surgery. Since that time, he has had a number of echo cardiograms. Throughout the nineties, Plaintiff worked without incident. As recounted above, from March 23, 2001 to March 27, 2001 plaintiff was hospitalized for loss of consciousness, dizziness and diaphoresis while at work. He was managed with medication. The discharge diagnosis was premature heartbeats, coronary heart disease, previous heart attack, previous heart bypass, moderate left ventricular dysfunction with an ejection fraction of 20-35%. (R. at 123- 144). Again, on March 30, 2001 he was hospitalized to have a cardiovert-defibillator implanted, and was discharged without complications on April 3, 2001. (R. at 145-202).

In April, 2001, plaintiff resumed work, but alleges to have had shortness of breath with activity. As stated above, he accepted early retirement from his company in November, 2001. About six months after his retirement, plaintiff was hospitalized for elective ICD testing after one episode of ventricular tachycardia was detected. At the time, the defibrillator was functioning normally (R. at 213).

In a report dated September 19, 2002 to the Division of Disability Determination services, Plaintiff's treating physician, Dr. John Stroebeck, made certain findings. They included that plaintiff had coronary heart disease, that he had pain upon moderate exertion, and had limited functional capacity for performing work (R. at 218-222).

In May, 2003 Plaintiff was examined by Francky Merline, M.D. on behalf of the SSA. The physician found, among other things, significant heart disease which "needs close follow up with his cardiologist," and uncontrolled hypertension (medication needed to be adjusted). Dr. Merline found that plaintiff could do certain types of work. Plaintiff can "sit, stand, walk, handle objects, hear,

speak and travel, but should not lift heavy objects" (R. at 233).

In June, 2003, a Physical Residual Functional Capacity Assessment was performed by the SSA. The assessment found that Plaintiff could stand or walk with normal breaks for about six hours out of an eight hour day; and could sit for about the same period of time (R. at 294).

In June, 2003, J.Drice, M.D., a state agency physician, reviewed the evidence of record and completed a Physical Residual Functional Capacity Assessment Form. (R. at 293-300). Dr. Drice found that Plaintiff retained the ability to lift twenty pounds occasionally and ten pounds frequently (R.at 294). Dr. Drice also found plaintiff could stand and/or walk about six hours in an eight-hour workday and sit about six hours in an eight hour workday. (R. at 294). Dr. Drice noted that Plaintiff could frequently balance and occasionally perform all other postural maneuvers. (R.at 295).

On June 26, 2003, a second state agency physician reviewed the evidence of record and affirmed Dr. Drice's assessment. (R. at 300). The second physician stated that a review of the most recent evidence revealed that Plaintiff was doing well with his pacemaker and that there was no new evidence that contradicted the decision of Dr. Drice (R.at 303).



IV.

A claimant is considered disabled under the Social Security Act if he is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §423(d)(1)a. A plaintiff will not be considered disabled unless he cannot perform his previous work and is unable, in light of his age, education, and work experience, to engage in another form of substantial gainful activity existing in the national economy. 42 U.S.C. §423(d)(2)(A). The Act requires an individualized determination of each plaintiff's disability based

on evidence adduced at a hearing. *Sykes v. Apfel*, 228 F.3d 259, 263 (citing *Heckler v. Campbell*, 461 U.S. 458, 467 (1983); *see* U.S.C. §405(b)). The Act also grants authority to the SSA to enact regulations implementing these provisions. *Heckler* at 466. The SSA has developed a five step sequential evaluation set forth in the Code of Federal Regulations for evaluating the legitimacy of plaintiff's disability. 20 C.F.R. §404.1520. In order to determine whether the claimant is disabled, the five-step sequential evaluation must be performed by the ALJ pursuant to 20 CFR §404.1520. In this case, the claimant's conditions met the first two steps, so the last three steps of the process are at issue: Those steps are:

> If the claimant is not performing substantial gainful work and has a severe impairment (or impairments) that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment (or impairments) meet or medically equals a listed impairment contained in Appendix 1, Subpart P, Regulation No. 4, the claimant is presumed disabled without further inquiry.
>
> If the claimant's impairment (or impairments) does not prevent him from performing his past relevant work, he is not disabled.
>
> Even if the claimant's impairment or impairments prevent him from performing his past relevant work, if other work exists in significant numbers in the national economy that accommodates his residual functional capacity and vocational facts, he is not disabled.

In this case, the step three findings of the ALJ are inadequate. In step three, the ALJ must compare the medical evidence to the list of impairments (20 C.F.R. §404.1520(d))*,* and determine whether claimant has any of the "listed impairments or its equivalent." The ALJ with a broadbrush simply found:

> The record does not establish any medical findings, on either examination or diagnostic work up that "meet or equal" the criteria contained under the Listing of Impairments of Appendix 1, Subpart P, Regulations No. 4.

In this case, the ALJ does not make any precise findings as to why such elements are not met. The courts have consistently held that such summary conclusions are "beyond meaningful judicial review" and are to be remanded. *Burnett v. Commissioner* 220 F. 3d 112, 119 (3rd Cir. 2000). As in *Burnett*, the matter must be remanded because the ALJ has not identified the relevant listed impairments, discussed the evidence, or explained her reasoning. *Burnett,* 220 F. 3d at 119. Moreover, there are no findings with regard to whether plaintiff's conditions when taken as a whole are the "equivalent" of one of the listed impairments. 20 C.F.R. §404.1526(b). The regulations place that responsibility squarely on the ALJ to evaluate equivalency. 20 C.F.R. §404.1526(a). On remand, the ALJ must make meaningful findings about equivalency with sufficient detail so that the Court may adequately review same.

The Court is not suggesting that further hearings must be conducted. The plaintiff has had the opportunity to present his case. The remand is solely for the purpose of supplementing the findings of the ALJ. It is in her discretion whether to re-open the factual record.

V.

Plaintiff argues the ALJ erred in her finding that the plaintiff's testimony lacked credibility. In a nutshell, the ALJ believed plaintiff was exaggerating his symptoms in light of the objective findings of the experts. It appeared to the ALJ that plaintiff's testimony was inconsistent with the reports of doctors Merline and Drice who found plaintiff was capable of work. In addition, in his own testimony, plaintiff admitted he could attend church, go to movies and walk for exercise. These

9

activities are inconsistent with a claim of total disability. The regulations permit the Commissioner to consider credibility. 20 C.F.R. §404.1529(c). "The credibility of witnesses is quintessentially the province of the trier of fact." *See*, *generally*, *Scully v. U.S. Wats, Inc.,* 238 F. 3d 497 (3d Cir. 2001). The Commissioner has discretion to evaluate the credibility of the Plaintiff's complaints. *Jenkins v. Commissioner*, 2006 U.S. App. Lexis 21295 (3d Cir. 2006).

VI.

In conclusion, the matter is remanded to the ALJ to fully explain her step three findings.


September 19, 2006

S/ *Peter G. Sheridan*
PETER G. SHERIDAN, U.S.D.J.